DECISION
Appellant Paul Perrino ("Appellant" or "Perrino") appeals from a decision of the Board of Regents for Elementary and Secondary Education ("Board of Regents"). The Board of Regent's decision sustained the Providence School Board's ("School Board") termination of Appellant from his tenured teaching position at Cooley Health and Science High School. Jurisdiction is pursuant to G.L. 1956 § 42-35-15, G.L. 1956 § 16-39-4, and G.L. 1956 § 16-13-4.
 I Facts and Travel
Appellant was a physical education teacher with the Providence School Department beginning in 1980. On December 6, 7, 8 and 9, 2005, he called in sick to work. During his absence, allegations arose from an anonymous source that accused Appellant of numerous school policy violations, including calling in sick during the December dates to attend a youth football tournament in Arizona and using a school computer to look at allegedly pornographic images. *Page 2 
Upon learning of these allegations, Donald Zimmerman ("Zimmerman"), the Senior Executive Director of Human Resources of the Providence School District ("School District"), began to investigate the claims. Appellant admitted to Zimmerman that he had been in Tucson, Arizona for the youth football championship tournament, and thus, had misrepresented that he was sick. Appellant also admitted to Zimmerman that he did not leave any lesson plans or written materials for the substitute teacher; he left only a grade book.
Zimmerman also investigated the allegations that Appellant was accessing inappropriate or pornographic material on the school computer. During his investigation, the Chief Technology Officer for the School District found pornographic or inappropriate material within the temporary internet folder of the P.Perrino password protected school computer account belonging to Appellant. This material was accessed between the periods of October 27, 2005 through December 2, 2005. The School District then hired Thomas Galligan ("Galligan") of Electronic Evidence Recovery, to perform forensic analysis on the computer. Galligan identified twelve dates on which the inappropriate material was accessed. Appellant's expert witness, Dr. Fay-Wolf, agreed with these dates.[1]
Subsequently, on December 19, 2005, the School Board voted to terminate Appellant's employment as a teacher. It explained that it premised this action on the following: Perrino's misrepresentation that he was sick in December when he attended the youth football game in Arizona; his failure to leave a lesson plan for the substitute teacher; and his use of a school computer to access pornographic and obscene materials. *Page 3 
The School Board then held an evidentiary hearing on August 28, 2006. During this hearing, the School Board permitted Appellant to cross examine the School Board's witnesses, present his own witnesses and present evidence in his defense. The School Board voted to sustain Appellant's termination.
Following this decision, Appellant filed a written appeal with the Commissioner of Education on September 8, 2006. (Board of Regents Ex. 2, Decision of the Commissioner of Education, Dec. 1, 2008 "Commissioner Decision" at 2.) After several days of de novo hearings, the Commissioner issued his decision on December 1, 2008. In his decision, the Commissioner found that the School Board had proven each factual allegation against Appellant by a preponderance of the evidence. Id. at 9. Specifically, the Commissioner found that undisputed evidence existed that Appellant was not entitled to sick leave under his contract to attend the youth football tournament in Arizona.Id. He concluded that the record clearly establishes that Appellant failed to leave lesson plans during his absence as required in his contract. Id. Concerning that issue, the Commissioner explained that any existence of a generic lesson plan is insufficient proof of the existence of an actual lesson plan left by Appellant, especially considering the failure to produce the document at the hearing and Appellant's lack of testimony about the plan. Id.
Furthermore, the Commissioner found that it is undisputed that the computer in the health room was used to access inappropriate material on approximately twelve dates between November 27 and November 30, 2005. Id. The Commissioner noted that all of these incidences occurred while the P.Perrino password protected account was logged into the computer. He found that the preponderance of the evidence does not lead to a *Page 4 
conclusion that another person accessed the material while logged onto Appellant's account. Id. In support of his conclusion, the Commissioner identified the numerous contradictions and inconsistencies within Appellant's testimony. Thus, he found that Appellant's denial that he accessed the material was insufficient to rebut the substantial evidence that he was the user who accessed pornographic websites. Id. The Commissioner, therefore, concluded that Appellant violated the Internet Acceptable Use Policy by intentionally accessing pornographic websites.Id.
Despite this conclusion, the Commissioner rejected the School Board's finding that Appellant also violated his statutory duty to inculcate principles of morality and virtue in students under his charge because, he found, no evidence exists that students were involved in or observed Appellant accessing this material. The Commissioner thus concluded that as a result of the three violations and their substantial nature, the School Board substantiated good and just cause for termination, notwithstanding Appellant's lack of prior disciplinary history. Id. at 11-12.
Perrino appealed the Commissioner's decision to the Board of Regents for Elementary and Secondary Education. In its decision, the Board of Regents found that the facts set forth within the Hearing Officer's decision are controlling because they are supported by the record. (Board of Regents Ex. 1, Decision of the Board of Regents, July 1, 2010, at 1.) The Board of Regents explained that the Commissioner's decision should not be disturbed by the Board of Regents because it is not "patently arbitrary, capricious, or unfair." Id. Accordingly, it sustained the Commissioner's decision on July 1, 2010.
Perrino appealed the Board of Regent's decision to this Court on July 20, 2010. Therein, Appellant maintains that sufficient good and just cause does not exist to support *Page 5 
his termination. Additionally, Appellant avers that termination was not an appropriate sanction in light of the circumstances. Perrino further argues that his termination is not effective until the 2006-2007 academic year because his termination was prior to the statutorily mandated March 1 deadline.
In response, the School Board contends that the Board of Regent's decision is not arbitrary and capricious because the School Board proved the violations by a preponderance of the evidence. The School Board also maintains that termination was indeed the appropriate sanction given the substantial violations. Finally, it opines that his termination date is not in violation of the March 1 deadline under a reasonable interpretation of the Teacher's Tenure Act.
 II Standard of Review
Section 16-39-4, governing the dismissal of tenured teachers, allows any party aggrieved by a decision of the Board to obtain judicial review of that decision in accordance with "chapter 35 of title 42," the Rhode Island Administrative Procedures Act. Section 42-35-15(g) of the APA states:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or *Page 6 
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
In reviewing an agency decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by legally competent evidence.Nickerson v. Reitsma,853 A.2d 1202, 1205 (R.I. 2004) (citations omitted). Legally competent evidence has been defined as "`such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla but less than a preponderance.'" Elias-Clavet v. Rhode Island Dep't of Employmentand Training Bd. of Review, 15 A.3d 1008, 1013 (R.I. 2011) (quoting Foster-Glocester Regional Sch. Comm. v. Board ofReview, 85 A.2d 1008, 1012 (R.I. 2005)). This Court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Interstate NavigationCo. v. Division of Pub. Utils. Carriers of R.I.,824 A.2d 1282, 1286 (R.I. 2003) (citations omitted). Thus, "if `competent evidence exists in the record, the Superior Court is required to uphold the agency's conclusions.'" Autobody Ass'nof R.I. v. Rhode Island Dep't of Bus. Regulation, et al.,996 A.2d 91, 95 (R.I. 2010) (quoting Rhode Island Pub.Telecommunications Auth. v. Rhode Island State Labor RelationsBd., 650 A.2d 479, 485 (R.I. 1994)).
The Superior Court's power to order a remand under § 42-35-15 is "merely declaratory of the inherent power of the court to remand, in a proper case, to correct deficiencies in the record." Champlin's Realty Assocs. v. Tikoian,989 A.2d 427, 448 (R.I. 2010) (quoting Lemoine v. Department ofMental Health, Retardation and Hosps.,113 R.I. 285, 290, 320 A.2d 611, 614 (1974)). This broad power ensures litigants a *Page 7 
meaningful review of their action. Id. (quotingLemoine, 113 R.I. at 289, 320 A.2d at 614).
The Board of Regents uses a two-tier system of review, in which the Commissioner of Education holds a hearing to evaluate a claim and the Board of Regents reviews his decision. This two-tier system is similar to a funnel. Environmental ScientificCorp. v. Durfee, 621 A.2d 200, 207-08 (R.I. 1993). At the first level of review, the hearing officer "sits as if at the mouth of the funnel" and analyzes the evidence, issues, and live testimony.Id. At the second level of review, the "discharge end" of the funnel, the Board only considers evidence that the hearing officer received first hand. Id. Our Supreme Court has held, therefore, that the "further away from the mouth of the funnel that an administrative official is . . . the more deference should be owed to the fact finder." Id. Determinations of credibility by the hearing officer, for example, should not be disturbed unless they are "clearly wrong." Id. at 206.
 III Analysis A Just and Good Cause
Appellant argues that the Board of Regent's decision was clearly erroneous because the Board of Regents and Commissioner failed to consider the potential unauthorized use of the computer, the allegedly false presentation by Galligan, and the spam advertisements. Appellant also avers that the Board of Regent's decision is clearly erroneous because no evidence exists to prove that the images located in the computer's hard drive were indeed viewed by the user. Finally, Appellant contends that the Board of *Page 8 
Regent's Decision contains an error of law because it fails to consider the "sub-folder," which allows physical education teachers to not leave a lesson plan when they are absent. Conversely, the School Committee maintains that the Board of Regent's decision sustaining the termination of Appellant is supported by substantial evidence because the record evidences good and just cause for dismissal.
Section 16-13-3 provides that "[n]o tenured teacher in continuous service shall be dismissed except for good and just cause." The Rhode Island Supreme Court has yet to delineate a specific legal standard for good and just cause, [2] but has applied such a standard in context. For example, in Barber v. Exeter-WestGreenwich School Committee, the school committee had good and just cause to dismiss a tenured teacher as a result of his continuing use of corporal discipline despite warnings that such conduct would lead to dismissal. 418 A.2d 13, 20-21 (R.I. 1980). In affirming that termination, the Rhode Island Supreme Court noted that it could only review the decision to inquire whether competent evidence exists in its support. Id. at 20 (citingGuarino v. Department of Social Welfare,410 A.2d 425, 428 (R.I. 1980); Great Lakes Dredge and DockCo. v. Norberg, 117 R.I. 600, 613, 369 A.2d 1101, 1108-09 (1977);see Foster-Glosester Regional Sch. Comm. v. Board ofReview, 854 A.2d 1008, 1012 (R.I. 2004).
In the instant matter, the Commissioner recognized that it was possible that Appellant had left his computer logged on during the day and another person or student *Page 9 
accessed the inappropriate images under his account. (Commissioner Decision at 10.) Nevertheless, the Commissioner concluded that the preponderance of the evidence leads to the conclusion that Appellant was the user that accessed the websites.Id. Specifically, the Commissioner found Appellant's testimony to be contracted by his log-in time at his computer and personal email and the testimony of his co-workers. Id. The Commissioner further noted Appellant testified inconsistently when he stated that he did not use the computer for personal matters, because he also testified that he used the computer to check bids on Ebay. Id. As a result of these inconsistencies, the Commissioner gave little weight to Appellant's testimony that he never accessed the aforementioned pornographic images using his personal email account. Id. Addressing Appellant's argument that the access to these websites was a result of spam emails, the Commissioner also found that clicking a spam link in a personal email account amounts to intentionally accessing the website.Id. Thus, he found that this intentional access violated the technology agreement that Mr. Perrino had agreed to in writing and thus, brought students closer to pornography than they would otherwise have been. Id. at 11.
While intentionally accessing pornography on a school computer is arguably "good and just cause" for dismissal, the Commissioner further found that Appellant failed to leave a lesson plan as required under his contract. Concerning this issue, the Commissioner dismissed the other physical education teacher's "belated recollection" of a generic lesson plan, because it was neither produced at the hearing nor mentioned in Appellant's testimony.Id. at 9. Finally, the Commissioner found that the evidence is undisputed that Appellant was not entitled to sick leave under his teachers' contract when *Page 10 
he went to Arizona in early December and that he misrepresented the reasons for his absence. Id. at 10.
When reviewing administrative appeals, courts will not substitute their judgment for that of the agency when evaluating credibility determinations. Costa v. Registrar of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988). As such, this Court declines to substitute its judgment for that of the Commissioner for the weight given to Appellant's testimony. See id. Moreover, the Commissioner's decision is owed substantial deference as a result of the Board of Regent's use of a two-tier decision process.See Environmental Scientific Corp., 621 A.2d at 207-08.
After considering the entire record, this Court finds probative, reliable, and substantial evidence on the whole record to support the findings made by the Commissioner and the Board of Regents.See Barber, 418 A.2d at 20-21 (reviewing "good and just cause" for whether evidence exists "to support the findings of the tribunal whose decision is being reviewed"). The Board of Regents had substantial evidence to conclude that good and just cause existed to terminate Perrino's employment with the School District. Accordingly, the Board of Regents' decision was not erroneous, arbitrary, capricious, or abusive of discretion.
 B Choice of Sanction
Appellant contends that termination was an arbitrary and capricious sanction because it undermines the basic principle of labor law, progressive discipline. Rhode Island indeed recognizes "the significant distinction between a school committee's action to suspend a teacher and its action to dismiss a teacher permanently."Ciccone v. Cranston Sch. Comm., *Page 11 513 A.2d 32, 35 (R.I. 1986); see also Royal v. Barry,91 R.I. 24, 32, 160 A.2d 572, 576 (1960) (affording school committees "wider latitude when acting to suspend than that conferred upon them when the question is one of final dismissal"). The Rhode Island Supreme Court, however, has addressed this distinction only within a procedural context, not as a result of a review of the sanction. See id.; Barry,91 R.I. at 32, 160 A.2d at 576.
Generally, the labor principle of progressive discipline is "a tool to bring about change in the behavior of employees, reserving termination for those guilty of serious offenses and those who have run the gamut of progressive discipline and have shown themselves to be incorrigible." Gosline, Bornstein and Greenbaum, Labor andEmployment Arbitration 14.03[3] (2001). In applying progressive discipline, Rhode Island courts must ensure that punishment for the offense "is proportionate to the offense committed." Martone v.State of Rhode Island, 611 A.2d 384, 385 n. 1 (R.I. 1992) (finding that "a serious offense . . . should be punished by a severe sanction"). Termination of employees without a history of prior discipline may nevertheless be appropriate in certain situations when "[d]espite the parties' commitment to progressive discipline and the effort to rehabilitate wayward conduct, certain offenses are so unacceptable as to preclude more than one such violation." Gosline, Bornstein and Greenbaum, Labor and EmploymentArbitration 14.03[3]. In that context, for an employer "[t]o condone such egregious behavior by imposing a penalty less than termination would set a precedent for others to claim a right to reinstatement after such an infraction." Id. *Page 12 
In reviewing an administrative agency's choice of sanction, courts will afford the agency considerable deference to its chosen sanction as a result of the agency's special competence. Am. Jur. 2d Admin. Law § 453; see Broad St. Food Mkt.,Inc. v. United States, 720 F.2d 217, 220 (1st Cir. 1983). Thus, the Court will review merely to find whether "the agency exercised an allowable discretion or an allowable judgment in its choice of the remedy." 2 Am. Jur. 2d Admin. Law § 453; see alsoRocha v. State Pub Utils. Comm'n,694 A.2d 722, 726 (R.I. 1997) (reviewing an agency's decision and sanctions to find whether the agency's decision was supported by any competent evidence).
In this matter, the Commissioner determined that the "substantial nature of the violations of the Internet Acceptable Use Policy that occurred from October 27 to November 30, 2005, his misrepresentation with respect to sick leave, and Mr. Perrino's failure to leave lesson plans for a four day period" constituted good and just cause for termination, despite no prior disciplinary history. Notwithstanding a lack of prior discipline, Appellant's violations in this matter may be considered "so unacceptable to preclude more than one violation." See Gosline, Labor andEmployment Arbitration 14.03[3]. Therefore, this Court concludes that the Board of Regents exercised allowable discretion in its choice of remedy as termination.
 C March 1 Termination Date
Appellant contends that his termination cannot be valid until the 2006-2007 school year because he received termination notice on December 28, 2005, subsequent to the March 1 deadline required by G.L. 1956 § 16-13-3. The Providence School *Page 13 
Committee, however, maintains that the March 1 deadline does not include the termination of teachers resulting from misconduct which justifies immediate termination.
Pursuant to § 16-13-3, "[w]whenever a tenured teacher in continuous service is to be dismissed, the notice of dismissal shall be given to the teacher, in writing, on or before March 1 of the school year immediately preceding the school year in which the dismissal is to become effective." The March 1 deadline is plain and unambiguous. Rhode Island General Laws § 16-12-6, however, seemingly conflicts with this deadline because it provides that "[t]he school committee of any town may, on reasonable notice and hearing, dismiss any teacher for refusal to conform to the regulations made by the committee, or for other just cause" and does not set any deadline.
In an administrative appeal, a reviewing court will defer to an agency's interpretation of an ambiguous statute when it has been charged with the statue's administration and enforcement.Arnold v. Rhode Island Dep't of Labor and Training Bd. ofReview, 822 A.2d 164, 169 (R.I. 2003) (citing In reLallo, 78 A.2d 921, 926 (R.I. 2001)). To withstand review, the agency's interpretation must not "defeat its underlying purpose" by being clearly erroneous or unauthorized.Id. (citations omitted). Thus, courts will ordinarily interpret an agency's statute only after the agency itself has done so. 2 Am. Jur. 2d Admin. Law § 574. In its decision on this matter, the Board of Regents failed to address the argument before it on the March 1 deadline and Appellant's date of termination.
Rhode Island courts have the broad power to remand "`to correct deficiencies in the record and thus afford the litigants a meaningful review.'" Champlin's Realty Assocs. v. Tikoian,989 A.2d 427, 448 (R.I. 2010) (quoting Lemoine v. Department ofMental Health, Retardation and Hosps., *Page 14 113 R.I. 285, 290, 320 A.2d 611, 614 (1974)). When an agency has yet to interpret a statute, which it is charged with carrying out, courts will generally remand to allow the agency to engage in its own analysis of the legislation. 2 Am. Jur. 2d Admin.Law § 574. A remand, therefore, is "favorable because of `the unique expertise possessed by administrative agencies.'"Id. (quoting Sartor v. Coastal Resources Mgmt.Council, 542 A.2d 1077, 1081 (R.I. 1988)). Accordingly, this Court will remand the termination date issue to the agency to allow it to engage in the analysis of G.L. § 16-13-3 and § 16-12-6 prior to this Court's analysis.
 V Conclusion
After a review of the entire record, the Court finds that Board of Regent's affirming of Appellant's termination was neither in violation of its statutory authority, nor clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Substantial rights of the Appellant were not prejudiced. The Court, however, remands the issue of the March 1 termination date to the Board of Regents for consideration. The Court will retain jurisdiction of this proceeding on appeal, should any party wish to appeal the revised judgment. Counsel shall submit appropriate judgment for entry.
[1] The opinions of Dr. Fay-Wolf and Galligan otherwise diverged.
[2] Generally, good and just cause may be defined by "any ground that is put forth by the school board in good faith which is not arbitrary, irrational, unreasonable or irrelevant to the task of maintaining an efficient school system." 78 C.J.S. Schools andSchool Districts, § 395 (citing School Comm. of Foxborough v.Koski, 8 Mass. App.Ct. 870, 391 N.E.2d 708 (1979)); seealso Pierre v. Smithfield Sch. Comm., No. PC 08-6864, 2009 WL 3328362 (R.I. Super. Sept. 9, 2009) (Procaccini, J.) (providing a discussion on the just and good cause standard).

 *Page 1